HERBERT M. AMMERMULLER, Plaintiff, *v.* MARIE AMMERMULLER, Defendant.*

Supreme Court, Special Term, New York County, December 13, 1943.

*Walter J. Hampton, Jr.,* for plaintiff.

*Albert J. Brier* and *Eugene L. Mullaney* for defendant.

* See, also, *Ammermuller* v. *Ammermuller,* 157 Misc. 75, affd. 249 App. Div. 609.

EDER, J. Action for absolute divorce. The parties were married in the city of New York on or about May 27, 1931, and continued to reside here until January 4, 1943, when the defendant left for Nevada, arriving at Reno on January 8th. She thereupon instituted an action against this plaintiff for divorce in the Second Judicial District Court, Washoe County, and obtained a decree of divorce dated April 3, 1943, and left Reno two days later; she thereafter married one Walter A. Hansen in Connecticut on May 11, 1943, and has ever since cohabited with him as husband and wife, living with him in that relationship at their home on Park Avenue, Manhattan, New York City, and presently in the borough of Queens, New York City.

Plaintiff charges this relationship to be an adulterous one for which reason he seeks a decree of divorce. The defendant has answered denying the material allegations of the complaint and has interposed a separate defense that on April 3, 1943, she obtained in the Second Judicial District Court of Washoe County, Nevada, a judgment in her favor and against the plaintiff dissolving the marriage existing between them and that they were forever released from the duties and obligations thereof and restored to their original status of unmarried persons, and the dismissal of the complaint is prayed for.

In the Nevada suit brought by the defendant, the plaintiff here (as defendant there) was not served with any process in that State but in lieu of publication was personally served in this State; he neither appeared nor answered in the Nevada suit; judgment went for plaintiff in that action upon inquest.

It is the claim and contention of the defendant that under the full faith and credit clause of the national Constitution as interpreted by the United States Supreme Court in *Williams* v. *North Carolina* (317 U. S. 287) this court is obligated to recognize the judgment of divorce of the Nevada court obtained by the defendant as a fully valid judgment binding on this plaintiff and hence as a bar to plaintiff's maintaining this action.

I do not share this view and for the reasons currently stated it is my opinion that the plaintiff is entitled to the decree of divorce sought against the defendant.

The Supreme Court of Nevada, in *Latterner* v. *Latterner* (51 Nev. 285) and *Lamb* v. *Lamb* (57 Nev. 421), held that where in an action for divorce it appears that the domicile was acquired by the plaintiff for the sole purpose of instituting such suit the District Court is without jurisdiction to render a valid judgment of divorce; that in acquiring a domicile the party must do so with the intent that it shall be permanent in char-

acter or for an indefinite time, but it must not and cannot be acquired solely for the purpose of instituting suit for divorce. If in such circumstances the District Court of Nevada is without jurisdiction to render a valid decree of divorce, it would seem to follow, indubitably, that the judgment rendered by such tribunal is null and void and of no effect.

Section 1 of article IV of the United States Constitution declares that " Full faith and credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." It is upon this mandate that the defendant relies to vitalize the Nevada decree of divorce and under which she seeks to compel its recognition as a valid judgment by the courts of this State. This provision obviously relates to and means a valid judgment only; for in the construction and interpretation of this provision of our Federal organic law the settled and now elementary rule is that a judgment obtained without jurisdiction in the court to render it, or which is procured by fraud, does not come within this provision and need not be given recognition by the courts of another State when such fact appears or is made to appear to their satisfaction.

Unless the decision made in *Williams* v. *North Carolina* (317 U. S. 287, *supra*) has departed from this firmly imbedded and uniformly followed rule and has accomplished a revolutionary change, then it is my view that the judgment of divorce rendered by the District Court of Washoe County, Nevada, may be collaterally assailed and shown to be the result of fraud or that it is void for lack of jurisdiction of said court to render the judgment, and this without offending or violating the aforementioned provision of the national Constitution.

Upon examination of the *Williams* case I find nothing in the prevailing opinion of the court which overrides the existing rule that the full faith and credit clause does not estop the court in which it is sought to assert the judgment of the foreign court from inquiring into and investigating its validity to ascertain and determine if it is entitled to be given valid recognition under that provision. Whatever sweeping change the majority ruling in the *Williams* case may have made, I interpret that it left unimpaired and unaffected the previously existing rule to which I have alluded.

The action of the Supreme Court in the *Williams* case was revolutionary in pointedly discarding the rule which it had proclaimed in *Haddock* v. *Haddock* (201 U. S. 562) to the effect that mere domicile within the State of one party to a marriage does not give the courts of that State jurisdiction to render

a decree of divorce enforcible in all the other States by virtue of the full faith and credit clause of the Federal Constitution against a nonresident who did not appear and was only constructively served with notice of the pendency of the action and which granted a divorce upon grounds not recognized in such other State.

In the instant case the *bona fides* of the defendant's domicile in Nevada as bearing on the jurisdiction of the District Court to render a valid decree of divorce has been put directly in issue by virtue of the separate defense which the defendant has interposed to this action and her testimony respecting her purported domicile there; but the defendant's position with respect thereto is that the decision in the *Williams* case precludes this court from inquiring into that feature. It is to be noted that the *bona fides* of the defendant's domicile in Nevada was not an issue litigated in her divorce suit there, for, as I have said, the plaintiff here neither appeared nor answered in that action.

In the *Williams* case it was *assumed* by the Supreme Court that the petitioners had a *bona fide* domicile in Nevada, not that such domicile was a sham; no proof of fraud in the acquisition of domicile in Nevada was adduced and though suspicion was present it was not enough to rise to the dignity of proof of fraud. The opinion of the court makes the following significant and circumspect observation (page 302): " But the question for us is a limited one. In the first place, we repeat that in this case we must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident, as distinguished from a domiciliary, is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada." The concurring opinion, at page 306, reads: " North Carolina did not base its disregard of the Nevada decrees on the claim that they were a fraud and a sham, and no claim was made here on behalf of North Carolina that the decrees were not valid in Nevada."

In the case at bar it affirmatively appears from defendant's own testimony that her domicile in Nevada was a mere pretense and purely fictitious; the defendant's testimony is that prior to her proceeding to Reno she resided and was domiciled in

New York City; she lived on Prospect Place, in the section of the borough of Manhattan known as "Tudor City", where she occupied a furnished apartment; she maintained it throughout her stay in Reno, paying the rent for the apartment here during that period, and promptly returned to it after obtaining her decree of divorce in Nevada; she has continued to make her permanent home here ever since and still does. In response to a question whether she went to Nevada for the purpose of procuring a divorce she answered: "I went to Nevada to obtain a legal residence." Continuing: "Q Only for the purpose of securing a divorce, isn't that right? A Yes. * * * Q Prior to January 1, 1943 where did you live? A 25 Prospect Place, Tudor City."

She resided there for a period of one year. When she left for Nevada in January, 1943, she had been given the name of a lawyer practicing there; she had friends in Nevada with whom she testified she stayed. Continuing: "Before I went West, I was in touch with them. They knew that I was coming out to try to get my freedom, and naturally I had contact with them and through them with an attorney."

She arrived in Reno on January 8th and saw her attorney the next day; after obtaining her decree of divorce on April 3rd she left on April 5th to return to her apartment in the borough of Manhattan, New York City, her true and actual domicile. "Q Where did you go to in New York when you returned to New York. A I went back to my home at 25 Prospect Place. Q You went back to your home at 25 Prospect Place; is that right? A Yes. Q You maintained an apartment at that address; is that right? A Yes. Q And your rent for that apartment was paid up during the period of time that you were in Reno, Nevada; is that right? A Yes.

It thus affirmatively and conclusively appears the defendant was never *bona fide* domiciled in Nevada and that it was a simulated domicile, a temporary abode as a convenience for the sole purpose of securing a divorce there.

The Supreme Court of Nevada having held in the *Latterner* and *Lamb* cases (*supra*) that a *bona fide* domicile in Nevada was a prerequisite to the jurisdiction of the District Court to render a valid judgment of divorce, the absence thereof made the decree rendered by that tribunal a nullity; the divorce decree which she procured from the District Court of Washoe County was founded upon a pretense at domicile in the State of Nevada, a domicile wholly and entirely feigned, a counterfeit.

The defendant argues that, even so, the judgment of divorce rendered by the District Court may only be attacked in the court which made the decree; that the question of domicile is not for this court to pass upon and that the Nevada court having rendered a decree of divorce binding in Nevada it is not for this court to question it but to give it binding effect here as well.

I do not subscribe to this viewpoint; I do not understand how it can be said that the judgment of the Nevada court is valid if the evidence establishes that the jurisdictional requirements of a *bona fide* domicile in that State were lacking.

The case of *Matter of Holmes,* very recently decided by the Court of Appeals (291 N. Y. 261), presents an illuminating discussion of the *Williams* case, but arose upon and involved a factual background different from that in the case at bar.

[In a part of the opinion here omitted, because of limitations of space, the court states the facts of the *Holmes* case and quotes extensively from the opinion.]

In the instant case we have a different factual situation; the controversy does not involve an attack on the Nevada judgment of divorce by a person not a party to that action; the parties to the Nevada action and in this one are the same, i. e., husband and wife, and it is the wife who as plaintiff in the Nevada suit, and as defendant in this one, has expressly interposed as a separate defense, and as a bar to this action by the husband, the judgment of the Nevada court, and the validity of which she has consequently put in issue.

[The court here continues its discussion of, and quotations from, the *Holmes* case.]

In the instant case there is no room for any assumption or presumption of a *bona fide* domicile because here the defendant has unequivocally testified that she went to Nevada solely to procure a divorce and the evidence affirmatively establishes that she at all times maintained her permanent domicile and residence in this State.

As I analyze the decision of the majority in the *Williams* case, I do not apprehend anything therein which can be regarded as an impairment of the right of this court to determine if there existed and was present before the foreign tribunal the jurisdictional prerequisites essential to give validity to its judgment in order to determine if it is entitled to recognition here under the full faith and credit clause of the Federal Constitution. Nothing said in the prevailing opinion indicates the intention of the court to overturn its decision in *Bell* v. *Bell* (181 U. S. 175) declaring

the right of the court of another State to examine into the question of the jurisdiction of the court which rendered the judgment as to which full faith and credit is claimed, and holding that a decree of divorce was not entitled to full faith and credit when it had been granted on constructive service of process by a court of a State in which neither party was domiciled. Indeed, it distinguished that case by the following explicit statement (317 U. S. 287, 291, *supra*) : " But there are two reasons why we do not reach that issue in this case. In the first place, North Carolina does not seek to sustain the judgment below on that ground. Moreover it admits that there probably is enough evidence in the record to require that petitioners be considered ' to have been actually domiciled in Nevada.' "

After due reflection I am of the opinion and conclude that this court may inquire if the jurisdictional requirements were present or lacking in order to determine whether the judgment of divorce of the Nevada District Court is entitled to full faith and credit and should be binding here, and it may decline to give such judgment recognition if it finds that the defendant's domicile in Nevada was a simulated one and, in that event, may declare that the judgment of the court of a sister State is invalid and unenforcible and that such foreign judgment is not binding on the spouse domiciled here.

I so conclude in the instant case and accordingly award judgment to plaintiff. Exception to defendant. Submit findings and interlocutory decree on notice.