OPINION OF THE COURT
Matthew F. Cooper, J.
The issue before the court is whether this State must accord full faith and credit to a judgment of divorce previously entered in California where the petitioner in that proceeding appeared for and lost a motion to dismiss on personal jurisdiction grounds and later failed to appear at trial. Defendant husband moves for summary judgment on his counterclaim interposed in this action for divorce that was commenced in New York by plaintiff wife. Defendant seeks dismissal of plaintiff’s complaint on the basis of a final judgment of divorce having been previously entered by a California court (California judgment). He also seeks to enforce the California judgment in this state. Plaintiff opposes this application and asserts that the California judgment is unenforceable as to the distribution of marital property located in New York.
The parties were married in Taipei City, Taiwan, in 1999 and soon thereafter emigrated to the United States. While in the United States, the parties resided and acquired property in both California and New York. In August 2007, plaintiff commenced an action for divorce in Superior Court of California, County of Los Angeles (California action and California court) citing irreconcilable differences as grounds.
Prior to plaintiffs commencement of the California action, the parties executed two separate separation agreements in anticipation of their impending divorce. The first agreement was executed in June 2006 in New York (New York agreement). This agreement references plaintiffs residence as New York City and expresses, all too prematurely, that it is an attempt to resolve all outstanding issues relating to the marriage.[1] On August 14, 2008, the parties entered the second agreement in California (California agreement). The California agreement recites that the plaintiff “has resided in California for a period *530 in excess of 90 days prior to the filing of the Petition for Dissolution of Marriage” and that an action for a judgment of dissolution of marriage was pending between the parties in California. The California agreement was set aside by decision of October 30, 2009, on grounds of fraud and undue influence based on, among other things, that court’s finding that plaintiff forged defendant’s initials.
After issue was joined in the California action, plaintiff moved for and the court granted her motion to discontinue the California action on August 27, 2008 without prejudice. Plaintiff, asserting domicile in New York, then filed a new action for divorce in September 2008 in this state. After plaintiff commenced the New York action, the California court clerk’s office reinstated the previously discontinued divorce action. Plaintiff then moved to dismiss the California action based on lack of personal jurisdiction over herself and forum non conveniens.[2] Plaintiffs application was denied after a hearing, with the California court finding that California was a more convenient forum and that by filing the action for divorce in California, plaintiff implicitly admitted to residency in California for at least six months, as required to commence an action for divorce under California law. The court further enjoined plaintiff from pursuing the New York action.
Trial in the California action was held on July 23-24 and August 20-21, 2009 in the voluntary absence of the plaintiff after she appeared by counsel on the motion to dismiss and failed to appear at a mandatory pretrial conference. On October 30, 2009, the California court entered a final judgment of dissolution of the marriage between the parties awarding defendant exclusive right and authority to possess and manage the parties’ New York City property located at 315 West 85th Street (New York property) and directed plaintiff to pay defendant $1,325,302.70. In the statement of decision filed concurrently with the California judgment, the court found that the parties’ California agreement, as it related to the New York property, was invalid as it confirmed a fraudulent transfer induced by plaintiffs misrepresentations to the defendant. The California court further found that it had personal and subject matter ju *531 risdiction over the plaintiff in light of plaintiffs admission in the petition commencing the action that “petitioner has been a resident of this State for at least six months and of this county for at least three months immediately preceding the filing of this Petition for Dissolution of Marriage,” her California Department of Motor Vehicles identification card listing the parties’ Rosemead, California property as her residence, and her admission of California residency in an answer to a previously commenced fraud action between the parties. The court, basing its determination on the testimony of the defendant, four witnesses, 75 exhibits, numerous written submissions filed by the plaintiff, and plaintiffs prior appearances, further found the plaintiff not credible, adjudged her in contempt of court for failing to comply with multiple orders of the court, sentenced her to serve five days in prison and to complete 120 hours of community service, and noted her general “disdain for court orders and for the judicial process.” (Peng v Hsieh [Super Ct, Los Angeles County, Cal, 2009, Meisinger, J.].)
Plaintiffs appeal of the California judgment is currently pending before the California Court of Appeal. No stay of the trial decision was granted. The California judgment was filed as a foreign judgment with the New York County Clerk’s office on November 10, 2009, in accordance with CPLR 5402.
The underlying complaint in the New York action for divorce was filed on September 2, 2008, when plaintiff allegedly thought the California action had been dismissed and marked off the calendar. Defendant interposed an answer and counterclaim to the New York action in January 2010 seeking to enforce the California judgment and dismiss the action. Defendant now moves by order to show cause to enforce those provisions of the California judgment awarding him title to the New York property and a money judgment of $1,325,302.70, to restrain plaintiff from commencing any further divorce actions against him, and for summary judgment to dismiss plaintiff’s complaint on grounds of res judicata and full faith and credit.
It is a firm principle of our federalist system of government that full faith and credit must be given by each state to those “public Acts, Records, and judicial Proceedings of every other State.” (US Const, art IV § 1.) This doctrine is premised on the notion that
“the judgment of a state court should have the same credit, validity and effect, in every other court in the United States, which it had in the state where it *532 was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States.” (Hampton v McConnel, 3 Wheat [16 US] 234, 235 [1818]; see also Williams v North Carolina, 317 US 287 [1942].)
Accordingly, out-of-state judgments give res judicata effect to those issues conclusively decided, thereby avoiding relitigation of those previously decided issues in any other state. (See Cadle Co. v Tri-Angle Assoc., 18 AD3d 100, 103 [1st Dept 2005] [“The constitutional requirement of full faith and credit precludes any inquiry into the merits of the judgment, the logic or consistency of the decision underlying it or the validity of the legal principles on which it is based”]; Matter of Farmland Dairies v Barber, 65 NY2d 51, 55 [1985] [“The doctrine establishes a rule of evidence, however, which requires recognition of the foreign judgment as proof of the prior-out-of-State litigation and gives it res judicata effect, thus avoiding relitigation of issues in one State which have already been decided in another”].)
Exceptions to the rule of full faith and credit lie where the court rendering the initial decision lacked jurisdiction, be it subject matter or personal, or when the initial decision was not final under the laws of the rendering state. (See Cadle Co., 18 AD3d at 103 [“While the merits of a judgment of a sister state may not be collaterally attacked, a judgment debtor may challenge the judgment on the basis of lack of personal jurisdiction”]; Fiore v Oakwood Plaza Shopping Ctr., 78 NY2d 572, 577 [1991] [“As a matter of full faith and credit, review by the courts of this State is limited to determining whether the rendering court had jurisdiction, an inquiry which includes due process considerations”]; Matter of Pearson v Pearson, 69 NY2d 919, 920 [1987] [“New York is not constitutionally required to give full faith and credit to a foreign judgment which is not final under that State’s laws”]; Matter of Farmland Dairies, 65 NY2d at 55 [“The rule is not absolute; the judgment of one court is conclusive and binding in another State only if the first court had jurisdiction to render it”].) However, where the jurisdictional questions have been fully and fairly litigated — and due process afforded each litigant — and finally decided in the out-of-state court, that court’s findings are entitled to full faith and credit, absent a finding of fraud or collusion. (Riehle v Margolies, 279 US 218, 225 [1929] [“A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if *533 obtained upon a default”]; Durfee v Duke, 375 US 106, 111 [1963] [“(A) judgment is entitled to full faith and credit — even as to questions of jurisdiction — when the second court’s inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment”].) “Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.” (Baldwin v Iowa State Traveling Men’s Assn., 283 US 522, 525-526 [1931].) The application of full faith and credit does not waver when applied to judgments of divorce rendered by the several states. This is true despite the power of each individual state to regulate the institution of marriage and the issues resulting therefrom, including protection of offspring, property interests, divorce, and enforcement of marital responsibilities, over the domiciliaries of that state. (Williams, 317 US at 298.) By virtue of a state’s fundamental interest in protecting the health and welfare of its domiciliaries, each state may alter the marital status of a spouse domiciled in that state, despite the absence of the other spouse. (Id. at 298-299.) Where an out-of-state court had proper jurisdiction over the parties and the marriage, that court’s decision affecting the marital status of the parties is entitled to full faith and credit and res judicata effect in this state. (See Ionescu v Brancoveanu, 246 AD2d 414, 416 [1st Dept 1998].)
The courts of this nation have long recognized the fundamental nature of the right to marry as well as the importance of the institution of marriage. (See Loving v Virginia, 388 US 1, 12 [1967].) Consequently, prior to being bound by a fact determined by another state relating to that state’s exercise of jurisdiction over the parties’ marriage, “a State not a party to the exertion of such judicial authority in another State but seriously affected by it has a right, when asserting its own unquestioned authority, to ascertain the truth or existence of that crucial fact.” (Williams v North Carolina, 325 US 226, 230 [1945].) The courts of New York, accordingly, may inquire into another state’s exercise of jurisdiction in a divorce matter where that out-of-state judgment is sought to be enforced in New York, to the extent that the party objecting to full faith and credit of the foreign judgment did not appear and have an opportunity to contest jurisdiction in the foreign state. (Id.; see also Sherrer v Sherrer, 334 US 343, 351 [1948]; Weiss v Weiss, 29 Misc 3d 1202[A], 2010 NY *534 Slip Op 51671[U] [Sup Ct, Kings County 2010, Sunshine, J.]; Phillips v Phillips, 15 Misc 2d 884 [Sup Ct, NY County 1958]; Ammermuller v Ammermuller, 181 Misc 98, 100 [Sup Ct, NY County 1943] [“(T)he full faith and credit clause does not estop the court in which it is sought to assert the judgment of the foreign court from inquiring into and investigating its validity to ascertain and determine if it is entitled to be given valid recognition under that provision”].) Where both parties appeared and contested jurisdiction in the out-of-state court, that court’s determination becomes res judicata and may not be relitigated in New York. (Matter of Farmland Dairies, 65 NY2d at 55; Ionescu, 246 AD2d at 416; Rainbow v Swisher, 72 NY2d 106, 110 [1988] [“In general, a final judgment of divorce issued by a court having both subject matter and personal jurisdiction has the effect of determining the rights of the parties with respect to every material issue that was actually litigated or might have been litigated”].)
The requirements of jurisdiction in a matrimonial action differ depending on which phase of the litigation is before the court. In a divorce action solely to dissolve the parties’ marriage, subject matter jurisdiction, which is in rem jurisdiction, over that action is acquired by one party to the marriage being domiciled in the state where the action is commenced. (See Estin v Estin, 334 US 541 [1948]; Williams, 325 US at 229 [“Under our system of law, judicial power to grant a divorce — jurisdiction, strictly speaking — is founded on domicil”]; Williams, 317 US at 300 [“The existence of the power of a state to alter the marital status of its domiciliaries, as distinguished from the wisdom of its exercise, is not dependent on the underlying causes of the domestic rift. As we have said, it is dependent on the relationship which domicil creates and the pervasive control which a state has over marriage and divorce within its own borders”]; Anello v Anello, 22 AD2d 694 [2d Dept 1964].) The Estin case and its progeny have affirmed this principle, referred to as the theory of the divisible divorce, that although a state may have jurisdiction to enter a divorce decree premised on one party’s domicile in that state, such jurisdiction is not sufficient to terminate all other rights of the parties, including all financial obligations and claims arising from the marriage. (334 US at 546 [“The fact that the requirements of full faith and credit, so far as judgments are concerned, are exacting, if not inexorable, does not mean, however, that the State of the domicile of one spouse may, through the use of constructive service, enter a *535 decree that changes every legal incidence of the marriage relationship” (citation omitted)]; see also Anello, 22 AD2d at 694; Matter of Nicholson, 180 AD2d 685, 686 [2d Dept 1992] [“A foreign ex parte decree of divorce dissolves the marital status of the parties but, as a general rule, does not affect their property rights”]; Hudson v Hudson, 52 Cal 2d 735, 739, 344 P2d 295, 297 [1959]; Senor v Senor, 272 App Div 306, 316 [1st Dept 1947, Dore, J., dissenting] [“The power of any court to grant a divorce rests ultimately on jurisdiction of the subject matter of the action. In turn that depends on the domicile, in the State granting the decree, of at least one of the parties; mere appearance without domicile does not confer jurisdiction . . . ‘The framers of the Constitution were familiar with this jurisdictional prerequisite, and since 1789 neither this Court nor any other court in the English-speaking world has questioned it’ ”].)
It is beyond dispute that the California court had the requisite jurisdiction to dissolve the marriage between the parties. Even if plaintiff, as she contends, was not a domiciliary of California on the date of commencement — which in turn would indicate that she perpetuated a further fraud on the California court by declaring as much in her petition for dissolution — the California court found that the defendant “had the intent to reside in and was therefore a resident of Los Angeles County from October 2001 to the present.” This, the court determined, complied with California Family Code § 2320 bestowing jurisdiction on the court to dissolve the marriage. The California court’s finding that it had jurisdiction to terminate the marriage based on defendant’s domicile conforms with the jurisdictional requirements of this State and the US Constitution as interpreted by the Supreme Court. (See generally Estin, 334 US 541; Williams, 317 US at 298-299 [“(E)ach state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent”]; Carr v Carr, 46 NY2d 270, 273 [1978] [“(D)ivorce jurisdiction may be exercised only when at least one of the parties to the marriage is domiciled in the State”].) The uncontroverted finding by the California court that the defendant was a domiciliary of that state requires this court to give full faith and credit to the dissolution of the parties’ marriage, regardless of whether the plaintiff was a domiciliary of California.
To reach and resolve the economic issues resulting from a failed marriage, including alimony, maintenance, and, depend *536 ing on the jurisdiction, the distribution of the marital assets in accordance with the principles of equitable distribution or community property, a court must have either in personam jurisdiction over both parties or in rem jurisdiction over the assets in question. (Anello, 22 AD2d 694 [1964]; Vanderbilt v Vanderbilt, 354 US 416, 418 [1957] [“(A) court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant”].) Since the property at issue is located in New York, in rem jurisdiction was not available and the California court, therefore, was required to have in personam jurisdiction over both parties for this State to give full faith and credit to that court’s decision as to the distribution of the marital assets. (See Muckle v Superior Ct., 102 Cal App 4th, 218, 226, 125 Cal Rptr 2d 303, 308 [Ct App, 4th Dist 2002] [“It is further settled California law that ‘ “a court having jurisdiction of the parties (in a dissolution action) may adjudicate their rights to land located in another state and that the adjudication is res judicata and is to be accorded full faith and credit in the situs state regardless of whether the decree orders execution of a conveyance” ’ ” (citations omitted)]; Cal Fam Code § 2660; see also Cal Civ Proc Code § 410.10.)
Here, personal jurisdiction over the defendant is not contested. As concerns the plaintiff, in two separate decisions the California court found that it had personal jurisdiction over her based on her judicial admissions of residency in that state and as a consequence of her commencing the divorce action. Plaintiff contends that by withdrawing the action, the court lost such jurisdiction over her person. However, this argument was available, asserted, and rejected at the hearing on the motion to dismiss wherein the California court indicated that it had personal jurisdiction over plaintiff. The California court’s statement of decision issued on October 30, 2009 further asserts jurisdiction over the plaintiff for a host of reasons, including her residency in California, multiple judicial admissions, and the fact that she sought to utilize the laws of California by commencing the action. That there may have been confusion as to whether the action was withdrawn or dismissed is of little significance since in the statement of decision the California court expressly found personal jurisdiction over plaintiff after the case had been withdrawn and subsequently restored. In light of these clear findings by the California court, coupled with the fact that no claims of fraud or collusion have been set forth by plaintiff, this court can find no basis in the record to in any way *537 undermine the California court’s determination as regards jurisdiction over the parties. (See Durfee, 375 US at 111.)
Without a doubt, this case presents certain unusual circumstances. In the overwhelming majority of actions where personal jurisdiction is contested, the court directs its inquiry towards whether the defendant was served within the state, whether that state had long-arm jurisdiction over the defendant, and whether such jurisdiction complies with the principles of due process. (See International Shoe Co. v Washington, 326 US 310 [1945].) Here, however, it is the plaintiff — the party who commenced the action and voluntarily subjected herself to the powers of the California court — who is now contesting the California court’s jurisdiction over her. Even if this court could reach the issue of jurisdiction, which it cannot since the issue was fully litigated at a hearing in which the plaintiff participated (see Cadle Co., 18 AD3d at 103), it would be pressed to find any basis whatsoever to find that the California court did not have jurisdiction over the very party who commenced the action. By commencing the California action, regardless of the procedural posture which ensued thereafter, the plaintiff effectively consented to personal jurisdiction, satisfying all due process standards and requirements. (See In re Lee’s Guardianship, 123 Cal App 2d 882, 888, 267 P2d 847, 851 [Dist Ct App 1954] [“(W)here a party asks relief other than quashing service of process upon him he submits himself to the jurisdiction of the court”].) California, therefore, pending any alternative determination by that state’s appellate court, had in personam jurisdiction to distribute the parties’ marital assets, including property located in this state, and its decision is entitled to full faith and credit.
Plaintiffs pending appeal in no way limits this court’s ability to enforce the California judgment in light of the absence of a stay issued by the appellate court and plaintiffs failure to pay the required financial undertaking. California law, similar to the law of this State, recognizes that the perfection of an appeal from an order directing the transfer of property, where said property is in the possession of the appellant, shall not act as a stay of enforcement unless “an undertaking in a sum fixed by the trial court is given.” (Cal Civ Proc Code § 917.4; see also CPLR 5519.) Neither party has presented proof of such undertaking or that a stay was effectuated. This court, therefore, may proceed to enforce the California judgment if all other procedural requirements are satisfied. (See CPLR 5404.)
*538 Plaintiff next argues that the California judgment impermissibly altered title to the New York property in violation of California law and is not entitled to full faith and credit by the courts of New York. The California judgment was properly filed as a foreign judgment with the New York County Clerk’s office in accordance with Civil Practice Law and Rules § 5402. Rather than attempting to alter or otherwise affect title to the New York property, the judgment merely awards defendant the property and directs plaintiff to “execute any and all documents required to carry out this division.” Thus, the California judgment does not do what plaintiff argues it impermissibly does.
The California court, in denying plaintiffs motion to dismiss the proceeding and issuing the judgment of dissolution, enjoined the plaintiff from pursuing the New York action and directed her to immediately discontinue the New York action. Plaintiff contends that these orders amounted to an impermissible restraint on her freedom and exceeded the bounds of California’s jurisdiction. This issue is moot, at least in terms of what is now before this court, based on this court’s finding that California had jurisdiction to dissolve the parties’ marriage and distribute the marital assets.
In light of the determination that the California court had in personam jurisdiction over the parties and in rem jurisdiction over the marriage, that a valid judgment of divorce was entered between the parties terminating their marriage and distributing their marital assets, and that a stay has not been entered by either the California court or an appellate court of that state, it must be concluded that the California judgment is entitled to full faith and credit by the courts of this State. The parties are therefore validly divorced and plaintiffs underlying complaint for a divorce in New York is barred by the doctrine of res judicata. (See Matter of Hunter, 4 NY3d 260, 269-270 [2005] [“(A) party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter”].) Similarly, defendant is entitled to the enforcement of the California judgment as concerns the entry of a money judgment for $1,325,302.70 in his favor against plaintiff and the provisions requiring plaintiff to transfer the New York property to defendant.
In light of the foregoing, and upon a finding that defendant is entitled to judgment as a matter of law and that there exists no *539 triable issue of fact (see CPLR 3212), it is hereby ordered that defendant’s motion for summary judgment is granted in all respects.

. Plaintiffs opposition papers reference an intent to enforce the New York agreement. However, no such application is currently before the court.

. Although plaintiff contends that her application to dismiss was based on a lack of personal jurisdiction, namely, that she was a resident of New York rather than California, the colloquy of the court, after determining that plaintiff was a California resident at the time of commencement, addressed the application as one for forum non conveniens.