**Deutsche Bank AG v Vik**

2025 NY Slip Op 31265(U)

April 11, 2025

Supreme Court, New York County

Docket Number: Index No. 161257/2013

Judge: James d'Auguste

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    Hon. James d'Auguste        PART 55

                               *Justice*

-------------------------------------------------------------------X

DEUTSCHE BANK AG,

                    Plaintiff,

          - v -

ALEXANDER VIK, CARRIE VIK, THE CSCSNE TRUST,
C.M. BEATRICE, INC., SEBASTIAN HOLDINGS, INC.

               Defendants.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 161257/2013 |
| MOTION DATE | |
| MOTION SEQ. NO. | 013 014 015 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 013) 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643, 644, 645, 646, 647, 648, 649, 650, 651, 652, 653, 654, 655, 656, 657, 658, 659, 660, 661, 662, 663, 664, 665, 666, 667, 668, 669, 670, 671, 672, 673, 674, 675, 676, 677, 678, 698, 699, 700, 701, 702, 703, 710

were read on this motion to/for                  SUMMARY JUDGMENT        .

The following e-filed documents, listed by NYSCEF document number (Motion 014) 679, 680, 681, 682, 683, 684, 685, 686, 687, 688, 689, 690, 691, 692, 693, 694, 695, 709, 711, 712, 713, 714, 715

were read on this motion to/for                  SUMMARY JUDGMENT        .

The following e-filed documents, listed by NYSCEF document number (Motion 015) 705, 706, 707, 708, 716, 717, 718, 719, 725, 726, 727, 728, 729

were read on this motion to/for                  SUMMARY JUDGMENT        .

        Plaintiff, Deutsche Bank, AG ("DB"), commenced this action seeking to enforce a judgment entered against defendant Sebastian Holdings, Inc. ("SHI") by the United Kingdom High Court of Justice, Queens Bench Division, Commercial Court ("UK Court"). Motions designated Sequence Numbers 013 and 014 are consolidated for disposition.

        In Motion Sequence Number 013, SHI, along with defendants Alexander Vik and Carrie Vik. move, pursuant to CPLR 3212, to dismiss the Amended Complaint against them.

        In Motion Sequence Number 014, DB moves, pursuant to CPLR 3212, for summary judgment on the Amended Complaint.

161257/2013   DEUTSCHE BANK AG vs. VIK, ALEXANDER
Motion No.  013 014 015

Page 1 of 13

In Motion Sequence 015, defendant C.M. Beatrice ("Beatrice") moves for summary judgment dismissing the Amended Complaint.[1]

## BACKGROUND

DB, a German bank with a branch in New York City, provides financial management and business services worldwide (*see* Amended Complaint, NYSCEF Doc. No. 634). SHI, a Turks and Caicos Islands ("TCI") corporation, is engaged in securities, currencies trading, and other financial endeavors (*id.*). Alexander Vik is the sole shareholder of SHI (*id.*). His wife, Carrie Vik, is sued as an individual and as trustee of the CSCSNE Trust ("CSCSNE or the "Trust") (*id.*). The Trust owns Beatrice, a TCI corporation (*id.*). Carrie Vik owns a house in Greenwich, Connecticut, and a condominium apartment in Manhattan (*id.*).

The underlying facts in this action are set forth in substantial detail in a prior decision of this Court (Anil C. Singh, J.) (*see* NYSCEF Doc. No. 520). In addition, the procedural history is amply detailed in another prior decision of this Court (Anil C. Singh, J.) (*see* NYSCEF Doc. No. 544).

Briefly, in 2006, SHI opened a foreign-exchange ("FX") trading account with DB's FX prime brokerage group, which is based in New York City. In 2008, SHI opened a series of additional accounts, which DB terms GPF accounts, with DB for the purpose of engaging in equities, futures, options, and FX trading. The FX and GPF accounts were subject to various agreements, some of which pertained to both kinds of accounts.

During the October 2008 global financial crisis, SHI accumulated hundreds of millions of dollars in losses in connection with its FX and other trading. These losses led to SHI owing debts to DB because of unpaid margin calls and the close-out of SHI's FX and GPF accounts.

---

[1] Beatrice labels its motion for summary judgment as a cross-motion despite being filed under as a separate motion sequence – 015. *See* NYSCEF Doc. No. 706, at 1.

**161257/2013  DEUTSCHE BANK AG vs. VIK, ALEXANDER**                    **Page 2 of 13**
**Motion No. 013 014 015**

On January 21, 2009, DB commenced an action, *Deutsche Bank AG v Sebastian Holdings, Inc.*, ([2013] EWHC 3463 [Comm], 2013 WL 5905024), in the High Court of Justice Queen's Bench Commercial Court (the "English Action"), seeking monies owed in connection with trading losses under two agreements, both of which contained exclusive English jurisdiction clauses (*see* UK Judgment, NYSCEF Doc. No. 33). On November 8, 2013, the court in the English Action issued a judgment, determining, among other things, that DB was entitled to $116,989,618 on the FX account and $118,656,727 on the GPF accounts, and awarded DB judgment in the amount of $243,023,089, which included interest (*id.*).

On December 5, 2013, DB commenced this action seeking to compel defendants to pay the UK Judgment (*see* Amended Complaint, *supra*). SHI, Alexander Vik, Carrie Vik, CSCSNE, and Beatrice are defendants (*id.*). The pleadings allege claims for a declaration of alter ego liability on the ground that Alexander Vik completely dominated SHI, intermingled funds with his own personal funds and with those of other entities he controlled, and used SHI's corporate form to commit wrongs against DB (first cause of action); a declaration of alter ego liability based on Alexander Vik's similar domination and use of Beatrice (second cause of action); enforcement of the UK Judgment against Alexander Vik (third cause of action); damages for unjust enrichment against Alexander Vik (fourth cause of action); damages for fraudulent conveyance against Alexander Vik, SHI, and Beatrice (fifth cause of action); damages for fraudulent conveyance against Alexander Vik and Carrie Vik, as an individual (sixth cause of action); damages for fraudulent conveyance against Alexander Vik, Carrie Vik, as Trustee of CSCSNE, and CSCSNE (seventh cause of action); damages for aiding and abetting fraudulent conveyance against Alexander Vik and Beatrice (eighth cause of action); and a declaration that Vik and SHI are jointly and severally liable to DB for expenses pursuant to agreements between

**161257/2013   DEUTSCHE BANK AG vs. VIK, ALEXANDER**
**Motion No. 013 014 015**

**Page 3 of 13**

3 of 13

[* 3]

DB and SHI (ninth cause of action) (*see* Amended Complaint, *supra*). Ivan Gonell Santana was subsequently appointed trustee of CSCSNE (see Santana Deposition Transcript, NYSCEF Doc. No. 531, p. 13).

On December 13, 2013, DB commenced an action, *Deutsche Bank AG v Sebastian Holdings, Inc.* (Docket No. FST CV 13-501467-8) in the Superior Court of the Judicial District of Stamford/Norwalk (the "CT Action" and "Connecticut Action," interchangeably), seeking to pierce the corporate veil of SHI and hold Alexander Vik liable for the UK Judgment (Connecticut Complaint, NYSCEF Doc. No 636). Alexander Vik and SHI are the only defendants (*id.*). The complaint alleges numerous ways in which Alexander Vik exercised dominion and control over SHI and abused the corporate structure and contains two causes of action (*id.*). The first cause of action seeks a declaratory judgment, under applicable New York law, that Alexander Vik and SHI are jointly and separately liable to DB for any damages or other relief for which SHI or Alexander Vik is liable (*id.*). The second cause of action seeks enforcement of the UK Judgment against Alexander Vik as the alter ego of SHI under Connecticut Uniform Foreign Money Judgments Recognition (C.G.S. Chapter 861) (*id.*).

The Connecticut Superior Court (Genuario, J.) denied the defendants' motion to strike the complaint, determining, among other things, that TCI, the place of incorporation of SHI, should govern the veil piercing claim; that since TCI is a British overseas territory, the laws of England and Wales should apply; and that under the applicable law, the complaint adequately stated a cause of action (*see Deutsche Bank AG v Sebastian Holdings, Inc.*, Superior Ct, Judicial District of Sanford/Norwalk, Complex Litigation Docket, Docket No. X08 FST CV 13 5014167-S, 2015 WL 1379364 [January 6, 2015]). The court's ruling was affirmed by the Appellate Court (*see*

**161257/2013   DEUTSCHE BANK AG vs. VIK, ALEXANDER**
**Motion No. 013 014 015**

**Page 4 of 13**

4 of 13

*Deutsche Bank AG v Sebastian Holdings, Inc.*, 174 Conn. App 573 [2017]) and the Supreme

Court of Connecticut (*see Deutsche Bank AG v Sebastian Holdings, Inc.*, 331 Conn 379 [2019]).

By order entered February 4, 2015, this Court (Anil C. Singh, J.) denied defendants'

motion to dismiss the Amended Complaint and cancel a notice of pendency, and the Appellate

Division, First Department unanimously affirmed (*see* Order, NYSCEF Doc. No. 281). By order

dated July 14, 2016, the Court granted, among other things, the branch of defendants' motion

that sought to stay the first cause of action in the pleading pending resolution of the Connecticut

Action (*see* Order, NYSCEF Doc. No. 520).

Following a remand and trial, the court in the Connecticut Action determined that DB

failed to satisfy its burden to justify piercing SHI's corporate veil, or that Alexander Vik diverted

SHI's assets with the specific intent of rendering it unable to pay its margin calls to DB (*see*

Post-Trial Mem of Dec, NYSCEF Doc. No. 677). As such, the court denied declaratory

judgment to DB in the first cause of action and declined to order enforcement of the Judgment in

the English Action against Alexander Vik in the second cause of action (*id.*).

SHI, Alexander Vik, Carrie Vik, and Beatrice now seek summary judgment dismissing

the Amended Complaint against them considering the determination in the Connecticut Action.

DB opposes the motions and seeks summary judgment on the Amended Complaint.

After moving for summary judgment, DB voluntarily discontinued all but the fifth and ninth

causes of action in the Amended Complaint (*see* Stipulation of Voluntary Discontinuance,

NYSCEF Doc. No. 697).

## DISCUSSION

An award of summary judgment is appropriate when no issues of act exist (*see* CPLR

3212[b]; *Andre v Pomeroy*, 35 NY2d 361 [1974]); *Sun You Ko v Lincoln Sav. Bank*, 99 AD2d

**161257/2013 DEUTSCHE BANK AG vs. VIK, ALEXANDER**
**Motion No. 013 014 015**

**Page 5 of 13**

5 of 13

943 [1st Dept 1984], *affd* 62 NY2d 938 [1984]). In order to prevail on a motion for summary judgment, the proponent must make a *prima facie* showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]); *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr., supra*). However, once the showing has been made, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action (*see* CPLR 3212[b]; *Zuckerman v City of New York, supra*).

In deciding the motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence (*see Negri v Stop & Shop*, 65 NY2d 625, 626 [1985]). Mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient to defeat summary judgment (*Zuckerman v City of New York, supra*).

Here, the remaining claims in the Amended Complaint allege causes of action for damages for fraudulent conveyance against Alexander Vik, Beatrice, and SHI (fifth cause of action) and a declaration that Vik and SHI are jointly and severally liable to DB for expenses pursuant to agreements between DB and SHI (ninth cause of action).

In seeking summary judgment, SHI, Alexander Vik, Carrie Vik, and Beatrice argue that the judgment in the Connecticut Action requires summary judgment in their favor in this action. Defendants insist that this Court lacks personal jurisdiction over them. Defendants also maintain that the Full Faith and Credit Clause of the United States Constitution, as well as the doctrine of

**161257/2013  DEUTSCHE BANK AG vs. VIK, ALEXANDER**
**Motion No. 013 014 015**

**Page 6 of 13**

6 of 13

[* 6]

collateral estoppel requires judgment in their favor. Defendants also assert that the doctrine of *res judicata* bars DB's claims. To support their position, defendants argue that the Connecticut and New York actions contain almost identical allegations, arise from the same transactional nexus, and seek identical relief.

In opposition, and in support of its motion for summary judgment, DB maintains that the Court previously established the proper exercise of jurisdiction over defendants. DB also asserts that the transfers were made without fair consideration and left SHI insolvent. DB further asserts that the situs of its injury is New York. In addition, DB contends that the claims for constructive fraudulent conveyance under the New York Debtor and Creditor Law and a declaration that Alexander Vik and SHI are jointly and severally liable to for the costs incurred by it under its agreements with SHI were not decided in the Connecticut Action.

Article IV, §1 of the United States Constitution mandates that full faith and credit must be accorded in each state to the judicial proceeding of every other state. Under Article VI, "New York Courts are required to enforce judgments rendered in other states" (*Cadle Co. v Tri-Angle Assoc.*, 18 AD3d 100, 103 [1st Dept 2005]). "The constitutional requirement of full faith and credit precludes any inquiry into the merits of the judgment, the logic or consistency of the decision underlying it or the validity of the legal principles on which it is based" (*id.* [internal citations omitted]). As such, "out-of-state judgments give *res judicata* effect to those issues conclusively decided, thereby avoiding relitigation of those previously decided issues in any other state" (*Peng v Su Hsieh*, 31 Misc 3d 528, 532 [Sup Ct, NY County 2011] [internal citations omitted]). "As a matter of full faith and credit, review by the courts of this State is limited to determining whether the rendering court had jurisdiction ..." (*Fiore v Oakwood Plaza Shopping Ctr.*, 78 NY2d 572, 577 [1991]).

**161257/2013  DEUTSCHE BANK AG vs. VIK, ALEXANDER**
**Motion No. 013 014 015**

Page 7 of 13

7 of 13

As a preliminary matter, defendants assert that the Court lacks personal jurisdiction over them. This Court (Anil C. Singh, J.) discussed two approaches to find jurisdiction – "alter ego" theory and "situs-of-injury," or commonly known as "location of the tort." First, under the "alter ego" theory, this Court would have jurisdiction over the entity defendants – SHI, CSCNE, and Beatrice – if this Court were to have jurisdiction over individual defendants Alexander Vik or Carrie Vik and the Court were to find that the entities were mere "alter egos" of the individual defendants. *See Deutsche Bank AG v Vik*, 2015 WL 458284 [Sup Ct, NY County 2015]; NYSCEF Doc. No. 544, pp. 8, 16, 23, 24-25, *affirmed* 142 AD3d 829 [1st Dept 2016]. However, as analyzed *infra*, this Court does not find that SHI, CSCNE, and Beatrice were alter egos of the individual defendants, and, thus, the Court cannot find jurisdiction on that basis.

As to the substantive claims against defendants, this Court (Anil C. Singh, J.) previously noted that complaint in the Connecticut Action "makes most of the same allegations as the NY complaint" (NYSCEF Doc. No. 520, p. 3). The Court further noted:

> "Both that the NY and CT complaints allege the [Alexander] Vik caused SHI to make numerous fraudulent transfers to various entities, including Beatrice, that [Alexander] Vik transferred his share to [CSCSNE], and that the purpose of these transfers was to prevent SHI from paying the UK judgment. Both complaints allege that Vik controls the transferees....
>
> In the NY and the CT cases, [DB] is plaintiff, and [Alexander] Vik and SHI are defendants. Between the two actions, there is sufficient identity of parties under CPLR 3211(a)(4). The NY case has three more defendants than the CT case; however, the presence of additional defendants in one case will not necessarily defeat a motion pursuant to CPLR 3211(a)(4) .... No reason is suggested that the presence of additional defendants in this case or their absence in the CT case will hinder resolution in either case.
> The first cause of action in the NY complaint and the two causes of action in the CT complaint seek the same relief and are based on the same allegations, that [Alexander] Vik and SHI are alter egos, that [Alexander] Vik moved assets in and out of SHI according to his conveniences without corporate familiarities, that the corporate veil between them should be pierced, and that [Alexander] Vik should be

**161257/2013   DEUTSCHE BANK AG vs. VIK, ALEXANDER**
Motion No. **013 014 015**

Page 8 of 13

made to pay the judgment granted against SHI in the UK action.

The resolution of the CT action will resolve the first cause of action in the NY case. Also, the CT action seems likely to resolve other causes of action in this NY case, such as those alleging fraudulent conveyance and unjust enrichment, in regard to [Alexander] Vik and SHI, who are parties to both actions. In addition, in the process of determining facts about [Alexander] Vik and SHI, the CT action may very well establish some facts about other defendants in this case. The CT complaint... makes the same allegations about the parties in this NY action that the NY action does. For instance, both complaints allege that [Alexander] Vik moved assets from SHI to Beatrice and (CSCSNE] so that SHI would not pay the UK judgment. There is no need for two courts to go over the same ground and, given that the courts will be weighing the same allegations and claims, there is a risk of inconsistent rulings"

(*id.*, pp. 3, 6-7).

On review of the pleadings in the New York and Connecticut actions, and the Post-Trial Memorandum Decision in the Connecticut Action, among other submissions, this Court is satisfied that the court in the Connecticut Action conclusively decided the claims raised in this action to give *res judicata* effect to those claims.

During a five-day trial in November and December 2019, the court in the Connecticut Action heard testimony and received into evidence numerous exhibits and transcripts from other proceedings, finding that DB failed to satisfy its burden to justify piercing SHI's corporate veil, or that Alexander Vik diverted SHI's assets with the specific intent of rendering it unable to pay its margin calls to DB (*see* NYSCEF Doc. No. 677, *supra*). As such, the court denied declaratory judgment to DB in the first cause of action and declined to order enforcement of the Judgment in the English Action against Alexander Vik in the second cause of action (*id.*).

The court specifically considered DB's claims that Alexander Vik dominated and controlled SHI, and caused SHI's assets to be transferred to himself, his companies and members of his family, with the specific intent of rendering SHI unable to pay its debt to DB. In so doing,

**161257/2013   DEUTSCHE BANK AG vs. VIK, ALEXANDER**
**Motion No. 013 014 015**

**Page 9 of 13**

9 of 13

[* 9]

the court looked at the relevant entities and individuals; SHI's accounts with DB; the parties course of dealing up to October 2008; the events of early October 2008; SHI's asset transfers in October 2008, margin calls, payments, and further asset transfers on October 13-16, 2008; the events of October 17-22, 2008; and the subsequent events of October 23, 24, and 30, 2008 (*id.*).

The Connecticut court analyzed factual elements that overlap the fraudulent conveyance claims in the fifth cause of action. The court found that Alexander Vik was the sole shareholder and director of SHI (*id.*, p. 7); that SHI was not a mere shell, but was an active corporation through which Alexander Vik conducted most of his substantial business until its collapse (*id.*, p. 56); that Alexander Vik completely dominated and controlled SHI (*id.*, p. 57); that DB provided ample evidence of co-mingling between SHI, Alexander Vik, and the entities he controlled (*id.*, p. 58); that Alexander Vik did not engage in fraud, deceit, or illicit conduct by distributing approximately $900 million of SHI's assets when he credibly believed they totaled $1.65 billion and had no reason to believe the remainder of approximately $750 million would be inadequate to cover any debt to DB (*id.*, p. 62); and that DB failed to satisfy its burden of proving that Alexander Vik acted with the specific intent of depriving SHI of its ability to satisfy its margin calls to DB by making the October 2008 transfers (*id.*, p. 63).

The court also made the following observations relative to DB's breach of contract claims:

> • "DB's contracts with SHI did not contain a personal guarantee
> by [Alexander] Vik. Yet, personal guarantees are so common
> that many [DB] personnel incorrectly thought there was one in place.
> • This effort to pierce SHI's veil is an attempt to circumvent
> the lack of a guarantee ....
> • The transfers out of SHI's accounts at [DB] were handled by
> [DB] itself.
> • Far from draining all of SHI's funds, [Alexander] Vik left
> available in SHI's accounts at [DB] at least $511 million, and then
> paid them on request.

**161257/2013   DEUTSCHE BANK AG vs. VIK, ALEXANDER**
**Motion No. 013 014 015**

Page 10 of 13

- But for [DB's] error in calculation, [Alexander] Vik could credibly have believed that $250 million to $280 million remained in SHI's account at [DB] even after paying the $511 million. This exceeded the amount of the ultimate shortfall.
- The court finds that [DB's] conduct contributed to the harm it suffered.
- The laws of both the UK and Connecticut view the disregard of the corporate shell as an extremely rare occurrence, to be used only to correct fraud or dishonesty. The court does not find [Alexander] Vick's behavior to be sufficiently blameworthy to justify piercing SHI's corporate veil in this case"

(*id.*, pp. 65-66).

On appeal, the Connecticut Supreme Court affirmed, finding that "the trial court's factual findings foreclose Deutsche Bank's claim under New York, Connecticut and TCI law ..." (*Deutsche Bank AG v Sebastian Holdings, Inc.*, 346 Conn. 546 [2023]; NYSCEF Doc. No. 640). The court noted that the Connecticut Superior Court "heard testimony from [Alexander] Vik, ... Carrie Vik, Johansson, and two forensic experts. The parties also submitted hundreds of pages of testimony from more than 20 witnesses and 450 exhibits" (*Deutsche Bank AG v Sebastian Holdings, Inc., supra*, at 583).

The foregoing makes clear that the "alter-ego" issue presented in this action were necessarily decided in the Connecticut Action and are decisive in this action, and that DB had a full and fair opportunity to contest the prior determination (*see D'Arata v New York Cent. Mut. Fire Ins. Co., supra*). Given the constitutional requirement of full faith and credit, this Court is compelled to enforce the judgment rendered in by the court in the Connection action and avoid relitigation of the issues previously decided in that action (*see Cadle Co. v Tri-Angle Assoc., supra*).

The doctrine of *res judicata* also compels enforcement of the judgment in the Connecticut Action as to the "alter-ego" claims. *Res judicata* "gives binding effect to the

**161257/2013 DEUTSCHE BANK AG vs. VIK, ALEXANDER**
**Motion No. 013 014 015**

**Page 11 of 13**

[* 11]                                              11 of 13

judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein" (*Landau P.C. v LaRossa, Mitchell & Ross*, 11 NY3d 8, 13 [2008]). As stated, the submissions reveal that the "alter-ego" issue raised in this action were necessarily decided in the Connecticut Action.

In this Court's decision of January 30, 2015 (NYSCEF Doc. No. 544), the Court found jurisdiction on the "situs-of-injury" theory based on transactions that occurred in New York. DB also argues that the fraudulent conveyances and breach of contract claims are not precluded because they seek different types of relief and require different types of proof from the alter-ego claims in the Connecticut Action. The Court is reserving decision on the issue of the preclusive effect of the Connecticut Action under collateral estoppel pending a hearing in which DB must identify specific transactions that they seek to reverse pursuant to Debtor and Creditor Law §§ 273 and 276. Specifically, DB must show for the individual transactions that the "situs-of-injury" was New York to maintain this Court's jurisdiction over the transaction and the transaction violated the New York Debtor Creditor and Law. During this hearing, defendants may show that the specific transaction is subject to collateral estoppel based on the Connecticut Action.

Accordingly, it is

ORDERED that the motions for summary judgment dismissing the Amended Complaint are granted pursuant to CPLR 3212(g) to the extent of dismissing all causes of action except Count V (constructive fraudulent conveyance) and Count IX (breach of contract); and it is further

**161257/2013   DEUTSCHE BANK AG vs. VIK, ALEXANDER**                    **Page 12 of 13**
**Motion No. 013 014 015**

12 of 13

ORDERED that the motion for summary judgment by plaintiff, Deutsche Bank AG, is denied; and it is further

ORDERED that, pursuant to CPLR 2218 and 3212(g), the parties appear at a hearing to be scheduled on a future date to address the factual and legal questions identified in this decision and order regarding individual transactions and the potential violation of the New York Debtor and Creditor Law.

This constitutes the decision and order of the Court.

| 4/11/2025 | | | | |
|---|---|---|---|---|
| DATE | | | James d'Auguste, J.S.C. | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | DENIED | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**161257/2013   DEUTSCHE BANK AG vs. VIK, ALEXANDER**
**Motion No.  013 014 015**

Page 13 of 13

13 of 13